**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **LYNN PHILLIPS** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:25-CV-00968-O** |
| | § | |
| **TEXAS DEPARTMENT OF TRANSPORTATION** | § | |
| | § | |
| | § | |
| **Defendant.** | § | |

## OPINION AND ORDER

Before the Court are Defendant's Motion for Summary Judgment, Brief in Support, and Appendix in Support (ECF Nos. 39, 40, 40-1); Plaintiff's Response, Brief in Support, and Appendix in Support (ECF Nos. 45–47); and Defendant's Reply (ECF No. 48). Having considered the Motions, briefing, and applicable law, the Court **GRANTS** Defendant's Motion for Summary Judgment (ECF No. 39).

## I. BACKGROUND[1]

This case arises from Plaintiff Lynn Phillips' ("Plaintiff") termination of employment with Defendant Texas Department of Transportation ("Defendant"). Plaintiff was hired as an at-will employee in September 2013 and worked at Defendant's Fort Worth District Headquarters.[2] At the time of her termination, she was employed full time as a Transportation Landscape Architect III. On October 31, 2018, Plaintiff was diagnosed with anal cancer and began cancer treatment on November 26, 2018.

[1] Unless otherwise cited, the Court's recitation of the facts is taken from Plaintiff's Amended Complaint. See Pl.'s Am. Compl., ECF No. 10

[2] Def.'s Mot. Summ. J. 3, ECF No. 40.

As a result of her cancer and related cancer treatments, Plaintiff suffered many severe long-term side effects. Most debilitating was her inability to control her bowels, medically known as unpredictable fecal incontinence. This condition led her to suffer severe diarrhea, requiring IV fluids and use of the restroom about 10-12 times before noon.. Other complications to her cancer included Hypokalemia—low potassium levels due to dehydration.

In June 2021, Plaintiff informally asked her supervisor, Matt Evans ("Evans") for an accommodation to work remotely on Mondays and Tuesdays. At that time, Defendant's HR policy was to evaluate telework requests on a case-by-case basis and required that any telework would not diminish an employee's productivity or work quality.[3] Defendant granted an allowance for Plaintiff to work remotely on Mondays and Wednesdays. Subsequently, in August 2021, Plaintiff formally requested an ADA accommodation with a doctor's recommendation for telework "as needed, up to five days a week."[4] On August 16, 2021, Defendant approved Plaintiff for an extra floating day every week where she could work remotely in addition to the two days already approved for remote work.

Defendant continued to extend her accommodations. For example, on September 22, 2021, Plaintiff submitted updated paperwork with a doctor's note indicating she needed up to five days of remote work "as required."[5] Then again on September 29, 2021, Defendant approved Plaintiff to work remotely 100% except for occasional site visits and drug testing, and this accommodation was extended on April 14, 2022..[6] Yet, even with the given accommodations, on July 20, 2022, Plaintiff received a Disciplinary Action letter to address her inadequate job performance.[7] The

[3] Def.'s App'x. Supp. Mot. Summ. J. [hereinafter "Def.'s App."] Ex. 4 (Business Records Affidavit of Leslie Mabry and Exhibits) App. 022, ECF 40-1.
[4] Def.'s App'x. Ex. 4 (Business Records Affidavit of Leslie Mabry and Exhibits) App. 023, ECF 40-1.
[5] Def.'s App'x. Ex. 4 (Business Records Affidavit of Leslie Mabry and Exhibits) App. 026, ECF 40-1.
[6] Def.'s App'x. Ex. 4 (Business Records Affidavit of Leslie Mabry and Exhibits) App. 033–34, ECF 40-1.
[7] Def.'s App'x. Ex. 4 (Business Records Affidavit of Leslie Mabry and Exhibits) App. 035–36, ECF 40-1.

letter outlined, among other things, Plaintiff's failure to meet deadlines, failure to communicate with supervisors, and failure to complete outstanding work.[8]

Despite receiving the disciplinary letter, Plaintiff's substandard performance continued, and, on March 1, 2023, Defendant placed her on a twelve-month probation.[9] Subsequently, Defendant issued Plaintiff a Performance Improvement Plan ("PIP") which addressed the deficiency in her performance and outlined an action plan to help improve her performance. Plaintiff signed the PIP on April 11, 2023.[10] After about four months of continued failure to meet expected job requirements, Defendant terminated Plaintiff's employment on August 28, 2023.[11]

Separately, Plaintiff alleged the following facts to support her claim of religious discrimination. During her cancer treatment, Plaintiff's supervisor, Evans, would pray both in the office and over the phone with and over Plaintiff for positive outcomes regarding her treatments. During one instance, on February 2021, Evans prayed over Plaintiff and her husband over the phone when Plaintiff called him to inform him that her then-husband had suffered a heart attack.[12] Plaintiff never asked Evans to stop praying for her nor did she reported this to anyone working for Defendant.[13]

Plaintiff filed this lawsuit on August 26, 2025, and filed her First Amended Complaint on September 16, 2025, alleging claims under the Americans with Disabilities Act ("ADA") 42 U.S.C. § 12101 et seq., Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq., religious discrimination under Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e

[8] *Id.*
[9] Def.'s App'x. Ex. 4 (Business Records Affidavit of Leslie Mabry and Exhibits) App. 037–38, ECF 40-1.
[10] Def.'s App'x. Ex. 4 (Business Records Affidavit of Leslie Mabry and Exhibits) App. 037–38, ECF 40-1.
[11] Def.'s App'x. Ex. 4 (Business Records Affidavit of Leslie Mabry and Exhibits) App. 042–43, ECF 40-1.
[12] Pl.'s Resp. Mot. Summ. J. 11, ECF No. 45.
[13] Def.'s App'x. Ex. 1 (Excerpts of Lynn Phillips' Deposition) App. 007 [76:20–76:25], ECF 40-1.

et seq., and disability discrimination under the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq. Defendant now moves for summary judgment on all counts.

## II. Legal Standard

### A. Federal Rule of Civil Procedure 56(a)

The Court may grant summary judgment when the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment is not "a disfavored procedural shortcut, but rather . . . an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (internal quotation marks and citation omitted).

"[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute as to any material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant must inform the court of the basis for its motion and demonstrate from the record that no genuine dispute as to any material fact exists. *Celotex*, 477 U.S. at 323. The Court must view the evidence in the light most favorable to the nonmovant. *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389 (5th Cir. 2013). And if there appears to be some support for disputed allegations, such that "reasonable minds could differ as to the import of the evidence," the Court must deny the motion for summary judgment. *Anderson*, 477 U.S. at 250.

"The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). "The opposing parties' failure to produce proof as to any essential element of a claim renders all other facts immaterial." *2223*

*Lombardy Warehouse, LLC v. Mount Vernon Fire Ins. Co.*, No. 3:17-CV-2795-D, 2019 WL 1583558, at *6 (N.D. Tex. Apr. 12, 2019) (Fitzwater, J.). Summary judgment is mandatory if the parties fail to meet this burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

## III. Analysis

### A. Plaintiff's Claims under the ADA and FLMA are barred by Sovereign Immunity.

Plaintiff brings claims of disability discrimination under the Americans with Disabilities Act and of retaliation under the Family and Medical Leave Act. In its Motion for Summary Judgment, Defendant contended that both claims are barred by sovereign immunity, and Plaintiff does not contest this.[14] Accordingly, summary judgment is **GRANTED** as to Counts I and II of Plaintiff's Amended Complaint and those claims are **DISMISSED**.

### B. Plaintiff's Claims under Section 504 of the Rehabilitation Act

Section 504 of the Rehabilitation Act prohibits "any program or activity receiving Federal financial assistance" from discriminating against a qualified individual with a disability." 29 U.S.C. § 794(a). The Fifth Circuit has found that "the remedies, procedures, and rights available under the Rehabilitation Act parallel those available under the ADA." *Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir. 2020). So, precedents interpreting or applying the ADA apply with equal force to claims under the Rehabilitation Act. Plaintiff brings claims of discrimination, failure to accommodate, and retaliation under the Rehabilitation Act. The Court considers each of these claims in turn.

#### 1. <u>Plaintiff's Failure to Accommodate Claim under the Rehabilitation Act</u>

Plaintiff alleges a failure to accommodate claim under the Rehabilitation Act. To prevail under a failure-to-accommodate claim under the Rehab Act, a plaintiff must prove "(1) is a

---

[14] Pl.'s Resp. Mot. Summ. J. 8, ECF No. 45.

qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered entity; and (3) the entity failed to make reasonable accommodations." *Ball v. LeBlanc*, 792 F.3d 584, 596 n.9 (5th Cir. 2015). It is the plaintiff's burden to show she is qualified. *Moss v. Harris Cnty. Constable Precinct One*, 851 F.3d 413, 419 (5th Cir. 2017). A plaintiff is qualified if she shows she "(1) could perform the essential functions of the job in spite of [her] disability or (2) that a reasonable accommodation of [her] disability would have enabled [her] to perform the essential functions of the job." *Id.*

Here, Plaintiff did not establish that she was a qualified individual. A "qualified individual" is someone who can perform the essential functions of an employment position with or without reasonable accommodation. 42 U.S.C. § 12111(8). Further, "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." *Id.* Plaintiff was employed as a Landscape Architect by Defendant.[15] As stated in the job description at the time she was initially hired, her essential duties and responsibilities included, among other things, oversight development, coordination, and administration of local and statewide programs and projects with public and private organizations, consultants, districts, and divisions.[16] Plaintiff was also expected to "handl[e] multiple tasks and projects, maintain[] effective working relationships with others, and prioritiz[e] and organiz[e] work assignments."[17]

[15] Pl.'s Am. Compl., ¶ 18, ECF No. 10
[16] *See generally*, Def.'s App'x. Ex. 4 (Business Records Affidavit of Leslie Mabry and Exhibits) App. 020–21, ECF 40-1.
[17] *Id.*

Plaintiff contends that because of her promotion and positive reviews from 2013-2018, she meets the standard for a qualified individual.[18] Although she may have once been a qualified individual, before her cancer and related cancer treatments, the present dispute arises out of events that took place between 2021 to 2023. The summary judgment record shows that Plaintiff could not perform her essential functions. Plaintiff received a formal Disciplinary Action letter on July 20, 2022, highlighting her failure to complete assigned tasks, specifically not delivering Landscape Maintenance Agreements or requested information by internal deadlines, despite reminders.[19] Despite receiving this letter, Plaintiff continued to miss deadlines, complete tasks, respond to inquiries, and inform her supervisors over project developments and was subsequently placed on probation for twelve months on March 1, 2023.[20]

Shortly thereafter, on March 22, 2023, Plaintiff received a PIP outlining her deficient performance and proposing an action plan to remedy it which she signed on April 11, 2023.[21] Despite the PIP, Plaintiff did not comply with the action plan and "continued to fail to respond to requests, complete required course, perform requested work . . . cancelled many of the standing weekly meetings with her supervisor . . . and was not following proper call-in procedures."[22] Plaintiff does not dispute the above characterization of her performance issues—in fact she raises no evidence that suggests she performed adequately during the disputed time. Additionally, beginning in September 2021, months before the first Disciplinary Action letter, Plaintiff received an accommodation for five days per week of remote work, and that accommodation was extended

---

[18] Pl. Resp. Mot. Summ. J. 18, ECF No. 45.
[19] *See generally*, Def.'s App'x. Ex. 4 (Business Records Affidavit of Leslie Mabry and Exhibits) App. 035–36, ECF 40-1.
[20] *Id.* at App. 037–38.
[21] Def.'s App'x. Ex. 4 (Business Records Affidavit of Leslie Mabry and Exhibits) App. 039–41, ECF 40-1.
[22] Def.'s App'x. Ex. 2 (Affidavit of David Salazar) App. 010, ECF 40-1.

in April 2022.[23] Even with this accommodation, as shown above, Plaintiff still failed to perform adequately thus cannot show that she "(1) could perform the essential functions of the job in spite of [her] disability or (2) that a reasonable accommodation of [her] disability would have enabled [her] to perform the essential functions of the job."

Because Plaintiff does not show that she was a "qualified individual" the Court need not to evaluate whether her disability and its consequential limitations were known by Defendant or whether Defendant failed to make reasonable accommodations and her failure-to-accommodate claim fails as a matter of law. Accordingly, summary judgment is **GRANTED** as to Plaintiff's failure-to-accommodate claim under the Rehabilitation Act.

2. Plaintiff's Discrimination Claim under the Rehabilitation Act

Plaintiff alleges a general discrimination claim under the Rehab Act.[24] To establish a prima facie case of discrimination under the Rehabilitation Act, "a plaintiff must proves that (1) she is an 'individual with a disability'; (2) who is 'otherwise qualified'; (3) who worked for a 'program or activity receiving Federal financial assistance'; and (4) that she was discriminated against 'solely by reason of her or his disability.'" *Hileman v. City of Dall.*, 115 F.3d 352, 353 (5th Cir. 1997) (citing 29 U.S.C. § 794(a)). Thus, employers are liable for discrimination under the Rehab act only if the discrimination occurred "solely by reason of [the employee's] disability," not when it is simply a "motivating factor." *Soledad v. U.S. Dep't. of Treasury*, 304 F.3d 500, 505 (5th Cir. 2002). Rehab Act claims are under the *McDonnell Douglas* burden-shifting framework. *Cohen v. Univ. of Tex. Health Sci. Ctr.*, 557 F. App'x 273, 277 (5th Cir. 2014). Under this framework, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981).

---

[23] Def.'s App'x. Ex. 2 (Affidavit of Leslie Mabry) App. 014, ECF 40-1
[24] Pl.'s Am. Compl., ¶ 132, ECF No. 10

Here, the Plaintiff does not meet the burden of proving a prima facie case of discrimination. Plaintiff concedes that the sole-causation requirement applies to discrimination cases under Section 784(a).[25] Thus, there must be a "causal connection" between her disability and the Defendant's allegedly discriminatory conduct, and the disability must be the "only cause" of Defendant's conduct. *Shaikh v. Texas A&M Univ. Coll. of Med.*, 739 F. App'x 215, 222 (5th Cir. 2018). As shown above, Defendant presented summary judgment evidence establishing that Plaintiff routinely missed deadlines, failed to finish assigned tasks, and did not comply with action plan Defendant provided in the PIP to help her improve. Therefore, Plaintiff cannot show that Defendant discriminated against her "solely" due to her disability and fails to establish a prima facie case. Because Plaintiff fails to meet one of the required elements, the Court thus need not continue with the *McDonnell Douglas* burden-shifting framework. Plaintiff's discrimination claim fails as a matter of law. Accordingly, summary judgment is **GRANTED** as to Plaintiff's discrimination claim under the Rehabilitation Act.

3. Plaintiff's Retaliation Claim under the Rehabilitation Act

Plaintiff alleges a retaliation claim under the Rehabilitation Act.[26] To establish a prima facie case of retaliation under the Rehab Act, a plaintiff must show that (1) she engaged in a protected activity; (2) her employer took an adverse employment action against her; and (3) a causal connection existed between the adverse employment action and the protected activity. *Calderon v. Potter*, 113 F. App'x 586, 592 (5th Cir. 2004). Temporal proximity is frequently used to establish the causal connection for a prima facie case of retaliation. *Grodman v. Texas Tech Univ. Health Scis. Ctr.*, 816 F. Supp. 3d 602, 622 (N.D. Tex. 2025). "Typically, for a plaintiff to meet [her] initial burden based on temporal proximity" the proximity must be "'very close' in

[25] Pl. Resp. Mot. Summ. J. 17, ECF No. 45.
[26] Pl.'s Am. Compl., ¶ 132, ECF No. 10

time." *Id.* (quoting *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 305 (5th Cir. 2020)). In the ADA context, the Fifth Circuit recently determined that a three-month gap between the initial request for an accommodation and the employee's termination did not satisfy the "very close" standard. *Hayes v. GStek, Inc.*, 175 F.4th 603 609–10 (5th Cir. 2026). Here, Plaintiff first requested an accommodation in August 2021, and she was terminated in August 2023. The two years that elapsed between the initial accommodation requested and Plaintiff's termination is not close enough to establish liability.

Because Plaintiff cannot establish the third requirement of a prima facie case of retaliation, her claim fails as a matter of law. Accordingly, Defendant's motion for summary judgment as to Plaintiff's claim of retaliation under the Rehabilitation Act is **GRANTED**.

### C. Plaintiff's Claim for Discrimination under Title VII

Finally, Plaintiff brings a claim of religious discrimination under Title VII of the Civil Rights Act of 1964, as amended.[27] Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, *religion*, sex, or national origin." 42 U.S.C. § 2000e-2(a) (emphasis added). Plaintiff alleges claims of both general religious discrimination and a hostile work environment claim. The Court considers each in turn.

#### 1. Plaintiff's Religious Discrimination Claim

To maintain a claim of disparate treatment discrimination under Title VII, "a plaintiff can either put forth direct evidence of an unlawful motive for an employer's decision, or establish unlawful motive through indirect or circumstantial evidence via the familiar *McDonnell-Douglas*

---

[27] Pl.'s Am. Compl., ¶ 118–126, ECF No. 10.

burden-shifting framework." *Carter v. Loc. 556, Transp. Workers Union of Am.*, 156 F.4th 459, 479 (5th Cir. 2025) (internal citations omitted). Here, Plaintiff does not provide any direct evidence of religious discrimination so the Court analyzes the claim under indirect circumstantial evidence method.

Under the *McDonnell-Douglas* framework, the Plaintiff bears the initial burden of proving a prima facie case of discrimination. To establish a prima facie case of religious discrimination under Title VII, a plaintiff must "present evidence that (1) she held a bona fide religious belief, (2) her belief conflicted with a requirement of her employment, (3) her employer was informed of her belief, and (4) she suffered an adverse employment action for failing to comply with the conflicting employment requirement." *Id.* at 478–79. It is undisputed that Plaintiff meets the first element of the prima facie case.[28] Plaintiff admits that she is a Christian.[29]

But Plaintiff fails to adequately meet her burden on the second and fourth factors of the prima facie case. As to the second factor, plaintiff nowhere alleges that her Christian beliefs conflicted with any requirements of her employment. Plaintiff merely alleges that although she is a Christian, she was very uncomfortable with Mr. Evans' religious activity at work.[30] It follows that, Plaintiff cannot show that was terminated because she failed to comply with a conflicting employment requirement because she cannot point to any requirement that conflicts with her belief. Thus, Plaintiff fails to establish the prima facie case for religious discrimination.

Furthermore, to plead a disparate treatment claim under Title VII, a plaintiff must allege facts showing an adverse employment action was taken against a plaintiff because of her protected status. *Hamilton v. Dallas Cnty.*, 79 F.4th 494, 502 (5th Cir. 2023). Here, Plaintiff shows zero

[28] Def.'s. Mot. Summ. J. 20, ECF 40.
[29] Pl.'s Am. Compl., ¶ 121, ECF No. 10.
[30] *Id.*

evidence that she was terminated because of her religious beliefs. In fact, as shown above, the summary judgment evidence shows that Plaintiff was fired for a myriad of performance issues.

Thus, for the above stated reasons, Defendant's motion for summary judgment as to Plaintiff's claim of religious discrimination under the Title VII is **GRANTED**.

2. <u>Plaintiff's Hostile Work Environment Claim</u>

Finally, Plaintiff raises a hostile work environment claim under Title VII arising from Mr. Evans' alleged religious activity at work.[31] To establish a prima facie case of harassment based on religion, a plaintiff must produce evidence that (1) he belongs to a protected class; (2) he was subject to unwelcome harassment; (3) the harassment was based on religion; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 443 (5th Cir. 2011). As to the fourth element, the Fifth Circuit has held that for conduct to be severe enough to alter the victim's employment, it must be such that a "reasonable person would find it to be hostile or abusive." *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 399 (5th Cir. 2007) (citing *Harris v. Forklift Sys.*, 510 U.S. 17. 21–22 (1993)). In determining whether the victim's work environment was objectively offensive "courts consider the totality of the circumstances, including (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance." *Id.* Here, Plaintiff's own testimony raises only three specific instances of religious conduct by her supervisor, Evans.[32] Furthermore, each instance came at a time where Plaintiff or her husband struggled with their health or relationship. Plaintiff nowhere claims that these instances physically threatened or humiliated her.

[31] Pl.'s Am. Compl., ¶ 123, ECF No. 10.
[32] Def.'s App'x. Ex. 1 (Excerpts of Lynn Phillips' Deposition) App. 006–07 [73:12–77:21], ECF 40-1.

In her deposition, she merely said, "it made me uncomfortable and didn't seem appropriate."[33] Thus, the Court finds that these instances were "mere utterances . . . which engender[ed] offensive feelings" in her, which do not "sufficiently affect the conditions of employment to implicate Title VII. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

Accordingly, for the above stated reasons, Defendant's motion for summary judgment as to Plaintiff's claim of hostile work environment under Title VII is **GRANTED**.

## IV. Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 39) is **GRANTED**. Accordingly, all of Plaintiff's claims are **DISMISSED with prejudice**.

**SO ORDERED** on this **19th day** of **November, 2026.**

Reed O'Connor
CHIEF UNITED STATES DISTRICT JUDGE

[33] *Id*. App. 008 [78:5–6], ECF 40-1.